### Case No. 4,599.

The EZILDA.

[Blatchf. Pr. Cas. 232.][1]

District Court, S. D. New York. Oct., 1862.[2]

[1] [Reported by Samuel Blatchford, Esq.]

[2] [Affirmed in Case No. 4,600.]

BETTS, District Judge. The cargo proceeded against in this suit was captured at sea, on board of and with the schooner Ezilda, September 30, 1861, by the United States steamer South Carolina, the day preceding and at the same place with the capture of the Joseph H. Toone, named in the previous cause. The Ezilda was subsequently, after appraisal, appropriated by the captors to the use of the United States, and the cargo was transmitted by other sea conveyance to this port for adjudication. The libel against the cargo, as prize of war, was filed November 23, 1861. On the return of the monition and attachment, on the same day, a proctor appeared for the claimant, and, on the 10th of December thereafter, obtained from the court an order allowing him three weeks' further time to put in a claim and answer to the libel. The answer and claim was filed December 31, 1861. On the 23d of May, 1862, the libellants moved for and obtained from the court an order to amend the title of this suit, so as to make it "The United States v. The Schooner Ezilda, Her Tackle, and Cargo," which order was granted by the court, after notice to the claimant's proctor, and in his presence in court. No further claim or answer has been filed.

The answer put in legally inures only to form an issue with the libel, and the vituperative tone of its assertions respecting the captors and the witnesses might have been spared in a paper having no further effect in the suit than to fulfil a legal formula, and to give the respondent a standing in court, to be heard upon the law and the facts drawn from the ship's papers and the witnesses present at her capture.

The appearance and answer are limited to the vessel alone. No answer or claim has been interposed for the cargo. The case was submitted to the court for decision, on written points and briefs, by the counsel for the respective parties, and without oral argument, on the 9th of October, 1862.

The court cannot notice, on final hearing, exceptions to proceedings before the prize commissioners, because of alleged irregularities in the admission of testimony, or in the method of conducting the examinations, or to the competency of witnesses examined. If there was ground for rectifying or suppressing the proofs for any like cause, the application to do so should have been brought before the court on special motion, with notice to the district attorney, pointing out the irregularities or deficiencies complained of, and praying the proper relief.

The prize commissioners report the testimony of three witnesses examined before them in preparatorio in the suit—William A. Hicks, navigator for the voyage, on board the prize, William Johnstone, mate, and Charles A. Scott, seaman. One of the witnesses was examined November 27, and the other two December 5, 1861, before the prize commissioners, and the depositions were placed in the registry of the court. The ship's papers produced before the prize commissioners, as reported by them to the court, consist of a provisional register of the vessel, taken before the British consulate at Havana, dated September 16, 1861, registering the vessel in that port to William Henry Aymar, a British subject; a bill of sale of the vessel to the said Aymar by Peter Foster, of Boston, Massachusetts, dated September 13, 1861; shipping articles, dated September 19, 1861, for a voyage on board the Ezilda from Havana "to the port of Matamoras, or any other port or ports of the Gulf of Mexico, and back to Havana," which article was signed by three persons, only one of whom was found with the vessel when she was captured; various bills of parts of the cargo; some invoices, and a bill of health. Most of the exhibits represent the intended voyage to be from Havana to Matamoras; but, in addition to the special language in the shipping articles covering all ports in the Gulf of Mexico, and necessarily embracing confederate ports, the bill of lading executed on the 18th of September, 1861, at Havana, by the then captain of the schooner, Sullivan, expressly states that the vessel is "bound for either of the Confederate States ports, not further south than Brazos." The answers of the acting master, the mate, and the seaman, prove that the vessel was bound to Barataria, or some other enemy port; that Aymar, her owner, was proprietor, with Brudendorf, her former master, of the cargo, and that the vessel and cargo were really destined for the enemy, and were intended to run the known blockade of enemy ports. The testimony of the owner, Aymar, invoked from the case of the Joseph H. Toone, proves that he was a domiciled trader in New Orleans.

There seems to me, therefore, no room for doubt that the vessel and cargo are subject to forfeiture for each of three causes: First. There was no bona fide neutral ownership of the vessel in the claimant Aymar. Second. The voyage was set on foot at Havana with intent to violate the blockade of the port of New Orleans, and the vessel and cargo were captured directly on the coast of Louisiana, whilst attempting to execute that purpose. Third. A large part of the cargo was contraband of war, and was laden on the vessel with knowledge, on the part of her owner and of the other freighters of the cargo, that the voyage was an illicit one, and was destined for the Confederate or Secession States of the Union.

It is therefore ordered that judgment of condemnation and forfeiture of the vessel and cargo be rendered in this suit.